# E. R. Darlington Lumber Company, Appellant, v. Amanda Burton et al., Appellees.

MECHANIC'S LIENS—*when fee as well as leasehold interest subject to.* If the owner of the fee in a lease authorizes the making of improvements, the fee is subject to a lien in so far as improvements are permanent in character and inure to the benefit of the owner, but in so far as such improvements are temporary and subject to removal by the lessee, a lien should not be awarded as against the fee.

Mechanic's lien. Appeal from the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the May term, 1909. Reversed and remanded. Opinion filed May 26, 1910.

C. C. TERRY and GEORGE V. REYNOLDS, for appellant.

WALKER & WOODS, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an appeal from a decree rendered in a proceeding by appellant to establish a mechanic's lien. The facts disclosed by the record, briefly stated, are as follows: On December 9, 1905, Amanda Burton and others, hereinafter designated as the Burton heirs, being the owners in fee as tenants in common of a tract of about 40 acres of land and another of about 120 acres, in the vicinity of Gillespie, Macoupin county, by written lease demised said premises to L. B. Armstrong and R. C. Isaacs for the term of five years. The annual rent reserved for the former tract was $240 per year, payable on January first of each year, and the taxes, and for the latter tract $360 per year payable on July first of each year.

The lease further provides that the premises should be used for park purposes, and that the lessees might improve the same, and should have the privilege of building a dam to form a lake, also roadways, driveways and either permanent

or temporary buildings upon the premises; that upon the termination of the lease either by forfeiture or expiration the lessees or their successors should have the right to remove from said premises any buildings or fixtures they might erect thereon, if they so elected; that the nonpayment of rent should operate as a forfeiture of the lease, and that the lessors might at their election enter into and take possession of the premises; that said lease might be extended or that the lessees should have the privilege of purchasing the premises upon certain terms and conditions, and that the lease should be binding upon the heirs, executors and administrators of the parties. At the time of the execution and delivery of the lease, a corporation known as the Gillespie Park Amusement Company was being organized by Armstrong, Isaacs and others, and the lease was taken for the benefit of such proposed corporation, although the lessors had no knowledge of such fact. When the corporation was fully organized the lease was delivered to its officers, but no formal assignment thereof was made to the corporation.

The company entered into possession of the premises, and in the spring and summer of 1906 improved the same as provided in the lease, by building a dancing pavilion, skating rink, band stand, ice cream stand, and also by the construction of a dam to form a lake, purchasing the materials therefor from the appellant, E. R. Darlington Lumber Company, except the paints, which were furnished by the Behrens Drug and Mercantile Company. The rent was paid to and including the installment which fell due January 1, 1907, but the subsequently maturing rent was not paid. The lessees also failed to pay the taxes on the forty acre tract for the years 1906 and 1907, and the same were paid by the Burton heirs.

The present bill was thereafter filed by E. R. Darlington Lumber Company against the Burton heirs, Armstrong, Isaacs, the Gillespie Park Amusement Company and the Behrens Drug and Mercantile Company, for the purpose of establishing a lien on said premises for the unpaid balance of its bill, alleging the facts substantially as above set forth, and further alleging that $460 of the materials furnished

by it were used in the construction of a dam which was an improvement to said premises not of a nature to be removed, nor susceptible of being removed. Answers were filed by all defendants. A cross-bill was filed by the Burton heirs, alleging the non-payment of rent as above set forth, and praying that the rights of the complainant, if any, in said premises, and in the improvement of the leasehold interest be made subject and subordinate to their claim for rents. An answer was filed to the cross bill, and on January 16, 1908, a decree was entered finding the amount due E. R. Darlington Lumber Company for materials furnished to Gillespie Park Amusement Company to be $1077.90, with interest from January 1, 1907; that there was due the Behrens Drug and Mercantile Company $55.75 with interest from January 1, 1907; that a lease was executed and delivered as above stated, and possession taken thereunder; that the premises were improved by the Gillespie Park Amusement Company under the lease; that the rent was paid to and including the installment which fell due January 1, 1907; that subsequently accruing rent had not been paid; that taxes upon the forty acre tract aggregating $68.68 which should have been paid by the lessees had been paid by the Burton heirs.

A lien was decreed in favor of E. R. Darlington Lumber Company and Behrens Drug and Mercantile Company, for the amount of their respective claims, but such lien was restricted to the leasehold interest in the premises and improvements thereon, and the decree expressly found that apart from the leasehold interest and improvements there was no lien on the interest of the Burton heirs in the premises. The decree further provided that if such payments were not made within thirty days, the master in chancery should sell the leasehold interest and improvements, but that the purchaser or purchasers at such sale should have no rights in said premises or said improvements different or greater than the lessees in said lease, or their assigns, would have, were not such sale made, and ordered the master in chancery to bring the money realized from the sale into court to abide further orders.

To reverse said decree this appeal is prosecuted by the E. R. Darlington Lumber Company.

It is contended by appellant that the Burton heirs, having by the express terms of the lease authorized the improvements to be made and placed upon the premises, by virtue of section 1, of the statute entitled "Liens" (R. S. 1908, page 1363), thereby subjected their fee simple interest therein to a lien for the materials furnished for such improvements and that the chancellor erred in not so decreeing.

In Brokaw v. Tyler, 91 Ill. App. 148, the lease to the premises upon which improvements were made, authorized the tenant to make improvements, and notwithstanding it was stipulated that such tenant should keep the premises free of all liens on account of such improvements, it was held that the lien attached to the fee. In Reliable P. & H. Co. v. Dallenbach, 145 Ill. App. 473, in which the lease to the premises provided that the building situated thereon should be used as a theater only and that the lessee should have the privilege at his own expense to make alterations and repairs to the building, we held that a lien for labor and materials in remodeling and repairing the heating and plumbing system necessary to fit the building for use as a theater, was enforceable against the fee title to the premises. Neither of the leases involved in the foregoing cases contained any provision as to the ownership of the improvements authorized, upon the expiration of the term granted.

In Lumber Co. v. Jones, 187 Ill. 203, and Electric Co. v. Amusement Co., 236 Ill. 452, it was held that when the owner of the fee of leased land consents that the lessee shall make improvements which are by the terms of the lease to become the property of the lessor upon the termination of the lease, by expiration or otherwise, he thereby subjects his interest to mechanic's liens for such labor and materials as may be furnished for such improvements.

Henry v. Miller, 145 Ill. App. 628, was a bill to enforce a lien upon the premises for repairs made by the lessee where the lease provided that the lessee should make such improvements and that the same should become the property of the

lessor at the expiration of the lease. We there held that in view of the provisions of the lease referred to, the complainant became entitled under the statute to a lien upon the premises.

We do not think the foregoing authorities are wholly controlling in the present case, for the reason that it does not appear that all of the Burton heirs had actual knowledge that the improvements were being made as provided by the lease. Appellant must therefore rely solely upon the provision of the lease authorizing the improvements, which provision must be considered in connection with the further provision that any building or fixtures that might be erected during the term of the lease could be removed at its termination by the lessees, or their successors or assigns. The theory upon which the mechanic's lien laws are based, is that the owner of the fee is benefited by buildings and improvements erected on the premises, they becoming a part of the realty, and that he in right and justice should pay for this accruing benefit, when it was induced or encouraged by his acts. It is founded upon the equitable doctrine that as the land is enhanced in value, the owner of the fee should pay for the improvements when he encouraged them. Boisot on Mechanic's Liens, page 4. Where, however, the lease provides that any buildings and improvements that are erected on the demised premises by the lessee, may be removed by him at the expiration of the term, such buildings and improvements as are temporary in character and capable of being removed, do not become part of the realty, but remain personal property. The fee is in no way enhanced in value, and the owner can derive no benefit therefrom. In such case there can be no sound, equitable basis for requiring the owner to pay for the same, and the lien of the material-men, if any exists, extends only to the leasehold estate. Central R. R. Co. v. Shiver, 125 Ga. 218; Rice v. Culver, 172 N. Y. 61. For the foregoing reasons, we are of opinion that as to materials furnished for such improvements as were susceptible of removal under the terms of the lease, at the expiration of the term, the chancellor properly decreed a lien upon the leasehold interest only. The

evidence shows, however, that a part of the materials furnished by appellant of the value of $460 were used in the construction of a dam across a stream of water whereby an artificial lake was created. It is obvious that such improvement could not be removed from the premises except at considerable expense, and without rendering the material used practically worthless, and totally destroying the lake. The privilege granted to remove such materials at the termination of the lease was therefore of no practical value or advantage to the lessee, and may be regarded as nugatory, and the improvement being incapable of removal necessarily inured to the owners of the fee of the premises. The Burton heirs having authorized the erection of improvements which they must be held to have known to be of that character and which of necessity would remain upon the premises at the expiration of the lease, and thus inure to the benefit of the then owner of the fee, cannot be permitted to invoke the removal clause in the lease to escape liability for the cost of the same.

It is insisted by the Burton heirs that inasmuch as the Amusement Company was not a party to the original lease, the express authority to make the improvements given to the original lessees cannot be held to have extended to the Amusement Company so as to bind the Burton heirs, and that it must be shown that they otherwise expressly authorized or actually consented to the making of the improvements. The lease was by express terms made binding upon the successors of the parties. The evidence shows that Amanda Burton acted for the Burton heirs in the collection of the rent due under the lease; that while the first installment was paid to her by Armstrong and Isaacs, the three following payments, being for rent due to January 1, 1907, were made through the medium of checks drawn by the Gillespie Park Amusement Company and payable to order, and further, that she actually saw the improvements in progress and knew that the same were being made by the Amusement Company as the equitable assignee of the lease. The Burton heirs cannot therefore question the assignment of the lease to the Amuse-

88 APPELLATE COURTS OF ILLINOIS.

Storm v. Cleveland, C. C. & St. L. R. Co., 156 Ill. App. 88.

ment Company, which in equity was as binding as though made in due form in writing.

While, as we have said, the decree was right in so far as it restricted the lien of appellant for materials purchased for the improvements capable of removal to the leasehold interest, the chancellor should have declared a lien upon the fee simple title for the cost of the materials used in the construction of the dam in question, and the failure so to do was error.

The decree will be reversed and the cause remanded with directions to the circuit court to so amend said decree as to establish a lien upon the fee simple title to the premises in question for the sum of $406.40 due the appellant for materials furnished by it and used in the construction of the dam authorized by the lease, and that said decree be further amended so as to provide that the purchaser or purchasers of said leasehold interest at such sale shall have no greater or different rights in said premises than the lessees or their assigns would have were not such sale made, but that the purchaser of the improvements other than the dam shall acquire the same free from any lien for accrued taxes or rent and further that said leasehold interest and said improvements be offered at such sale both separately and together.

The clerk of this court will tax one-half of the costs of this appeal to each of the parties thereto.

*Reversed and remanded with directions.*